UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DEBORAH CLARK, | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| vs. | ) |
| | ) 1:20-cv-01569-JPH-MG |
| FAMILY DOLLAR STORES OF INDIANA, LLC | ) |
| and STRENGTH OF NATURE, LLC, | ) |
| | ) |
| *Defendants*. | ) |

**REPORT AND RECOMMENDATION**

Pending before the Court is Defendants Family Dollar Stores of Indiana, LLC ("Family Dollar") and Strength of Nature, LLC's ("SoN") Motion to Enforce Settlement Agreement. [Filing No. 73; Filing No. 74.] Plaintiff Deborah Clark has opposed the Motion, [Filing No. 75], to which Defendants have replied, [Filing No. 77].

The Court referred this matter to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b). [Filing No. 76]. For the following reasons, the undersigned recommends that the Court grant Defendants' Motion in part as set forth below.

**I.**
**BACKGROUND**

Plaintiff sued Defendants in state court in April 2020 for personal injuries she suffered after using a hair relaxant product manufactured by SoN and sold by Family Dollar. [*See* Filing No. 1-2.] In June 2020, Defendant Family Dollar removed the lawsuit to federal court on diversity grounds. [Filing No. 1.] Although Plaintiff dismissed SoN as a Defendant while the case was still

pending in state court, Plaintiff amended her complaint in federal court to add SoN as a Defendant once again. [Filing No. 23.]

The Court directed the parties to engage in private mediation. [Filing No. 52.] The parties participated in a private mediation on June 24, 2021 with Mediator Richard Norris. [Filing No. 71.] Plaintiff, Plaintiff's counsel, and Defendants' counsel signed a "Mediation Settlement Agreement" at the conclusion of the June 24, 2021 mediation. The Mediation Settlement Agreement states as follows:

> The plaintiff agrees to settle her claims against the defendants for the sum of Ten Thousand Dollars ($10,000.00).
>
> Upon receipt of settlement proceeds, the plaintiff agrees to satisfy any applicable liens, including any applicable Medicare liens, dismiss her lawsuit, with prejudice, and to provide defendants with an indemnifying release.
>
> Plaintiff also agrees, as a condition of the settlement of this case, never to use any Godrej North America d/b/a Strength of Nature products in the future.
>
> Costs of mediation to be paid on behalf of defendant [sic].

[Filing No. 74 at 11.] Mediator Norris subsequently advised the Court that the parties "reached a settlement which will conclude all of the issues in this case." [Filing No. 71.] On July 1, 2021, the Court entered an Order noting that a settlement had been reached and ordered the parties to enter dismissal within 60 days. [Filing No. 72.]

Defense counsel sent Plaintiff's counsel a draft proposed settlement and release agreement on August 10, 2021 (the "Proposed Agreement"). [*See* Filing No. 74 at 19; Filing No. 76 at 23-30.] On August 25, 2021, Plaintiff's counsel sent revisions to the Proposed Agreement (the "Revised Proposed Agreement"), [Filing No. 74 at 32-39], that struck the first sentence of section 2.3 which required Plaintiff to notify the Court of settlement (unnecessary because the Court had already been advised that a settlement had been reached), the entirety of section 3.1 which called

for mutual confidentiality and non-disparagement, and the entirety of section 3.12 which requires, in the event of a breach, the breaching party to reimburse the non-breaching party's damages and attorneys' fees and expenses. [Filing No. 74 at 35-37.] Plaintiff's counsel explained that the stricken language in the Revised Proposed Agreement "do not meet the mediation agreement." [Filing No. 74 at 16.] Plaintiff's counsel further advised that Plaintiff "currently refuses to sign any version of the Release." [Filing No. 74 at 16.] Plaintiff continues to refuse to sign a release and advises the Court that "she does not want to settle and did not fully understand the Mediation [Settlement] Agreement." [Filing No. 75 at 1.]

Defendants filed the Motion to Enforce Settlement Agreement, [Filing No. 73], in which they ask the Court to enter an order requiring Plaintiff to sign the Proposed Agreement.

## II.
### DISCUSSION

Defendants argue that the signed Mediation Settlement Agreement contains sufficient material terms for the Court to enforce. [Filing No. 74 at 5.] They further ask that, in addition to the terms in the Mediation Settlement Agreement, Plaintiff be bound by "the standard, customary, provisions found in [the] Proposed Agreement," [Filing No. 74 at 5], which Defendants attach as Exhibit C to their Memorandum in Support of Motion to Enforce Settlement Agreement, [Filing No. 74 at 22-30]. Defendants argue that Plaintiff's apparent buyer's remorse does not render the parties' settlement agreement unenforceable. [Filing No. 74 at 6-7.]

Plaintiff's response does not dispute the facts set forth by Defendants but rather contends that that "she does not want to settle and did not fully understand the Mediation [Settlement] Agreement." [Filing No. 75 at 1.] Counsel for Plaintiff represents that the Mediation Settlement Agreement was signed by Plaintiff "after a discussion was had concerning it." [Filing No. 75 at 1.] Alternatively, Plaintiff argues that if the Court is inclined to enforce a settlement agreement,

3

the Court should use the Revised Proposed Agreement, attached as Exhibit D to Defendants' Memorandum in Support of Motion to Enforce Settlement Agreement, which revises section 2.3 and strikes sections 3.1 and 3.12. [Filing No. 75 at 1-2.] Plaintiff says that "[t]he issue with respect to the struck-through language is this: the provisions are not customary when no consideration for them has been offered." [Filing No. 75 at 1-2 (emphasis omitted).]

In reply, Defendants fault Plaintiff for not explaining what aspects of the Mediation Settlement Agreement she did not fully understand. [Filing No. 77 at 1-2.] In response to Plaintiff's alternative argument regarding stricken language in the Revised Proposed Agreement, Defendants contend that the request is "disingenuous," because "provisions 2.3, 3.1 and 3.12 are standard provisions" and argues that Plaintiff's counsel did not initially take issue with these terms. [Filing No. 77 at 2.]

**A.    The Mediation Settlement Agreement**

"A federal court's authority over a case pending before it includes the authority to enforce a settlement agreement the parties have executed but not satisfied." *Smith v. Peterson*, 2020 WL 6701284, at *2 (S.D. Ind. Nov. 10, 2020) (citing *Carr v. Runyan,* 89 F.3d 327, 331 (7th Cir. 1996)). If the existence or terms of the agreement are in doubt, an evidentiary hearing may be needed to resolve disputes or ambiguities. *Sims–Madison v. Inland Paperboard and Packaging, Inc.,* 379 F.3d 445, 449 (7th Cir. 2004). However, an evidentiary hearing is unnecessary when the facts surrounding the formation of a settlement agreement are not in dispute. *See Hakim v. Payco-Gen. Am. Credits, Inc.*, 272 F.3d 932, 935 (7th Cir. 2001) ("If … a court can have reasonable confidence that it knows what the contract means, it ought not put the litigants (and the trier of fact) to the bother, expense, and uncertainty of a trial or other evidentiary hearing.") (internal quotation marks omitted). For reasons set forth below, the undersigned finds an evidentiary hearing is unnecessary.

A settlement agreement is a contract that is enforceable under ordinary state law contract principles. *Lynch, Inc. v. SamataMason Inc.*, 279 F.3d 487, 490 (7th Cir. 2002). A settlement agreement in a federal case is "just like any other contract." *Dillard v. Starcon Int'l, Inc.*, 483 F.3d 502, 506 (7th Cir. 2007). Here, Indiana law governs, and under Indiana contract law, an "offer, acceptance, plus consideration make up the basis for a contract." *Zimmerman v. McColley*, 826 N.E.2d 71, 76 (Ind. Ct. App. 2005). If one party "transmits a clear and unambiguous settlement offer which is accepted by the other party, the parties have reached a binding settlement agreement." *Pohl v. United Airlines, Inc.*, 110 F. Supp. 2d 829, 837 (S.D. Ind. 1999) (quotation omitted). Determining whether there has been a meeting of the minds "is a factual matter to be determined from all the circumstances," and the Court should refer "not to the parties' subjective intents but their outward manifestation of it." *Zimmerman*, 826 N.E.2d at 77.

"It is established that if a party agrees to settle a pending action, but then refuses to consummate his settlement agreement, the opposing party may obtain a judgment enforcing the agreement." *Id.* at 76 (citing *Georgos v. Jackson*, 790 N.E.2d 448, 453 (Ind. 2003)). Courts routinely conclude that settlement agreements are enforceable when they include material terms of payment for dismissal of the suit. *See Elustra v. Mineo*, 595 F.3d 699, 709 (7th Cir. 2010) ("We find that the material terms were definite and certain: defendants would pay $6,000 to the Elustras in exchange for their dismissal of the lawsuit."); *see also Beverly v. Abbott Labs.*, 817 F.3d 328, 333 (7th Cir. 2016) (agreement was enforceable because it sufficiently defines the parties' intentions and obligations, namely that plaintiff would voluntarily dismiss her claim if the defendant paid her $210,000).

The Court finds that the undisputed record shows that Plaintiff entered into the Mediation Settlement Agreement with Defendants under which Defendants agreed to pay Plaintiff $10,000

5

and pay the cost of the mediation in exchange for Plaintiff dismissing her claims, signing a release, and refraining from using SoN products in the future. [Filing No. 74 at 11.] These terms are sufficiently definite and material to form a contract, and Plaintiff outwardly manifested her intent to be bound by these terms by signing the Mediation Settlement Agreement. Thus, the terms of the Mediation Settlement Agreement are enforceable.

However, Plaintiff claims that she now does not want to settle her claims and that she "did not fully understand the Mediation [Settlement] Agreement." [Filing No. 75 at 1.]

First, "a change of heart after [a party] had agreed to the … settlement does not undo the agreement. A party who has previously authorized a settlement remains bound to its terms even if she changes her mind." *Trask v. Bish*, 2013 WL 6095631, at *4 (N.D. Ind. Nov. 19, 2013). Thus, Plaintiff no longer wanting to settle her claims does not provide a basis for not enforcing the terms set forth in the Mediation Settlement Agreement.

Second, Plaintiff's bare representation that she "did not fully understand" the terms of the settlement agreement is not a basis to set aside the agreement either. "Under Indiana law, a person is presumed to understand and assent to the terms of the contracts he signs." *Buschman v. ADS Corp.*, 782 N.E.2d 423, 428 (Ind. Ct. App. 2003). Generally, "[a] party cannot avoid a contract in Indiana unless he was of unsound mind when he entered the agreement and had no reasonable understanding of the contract's terms due to his instability." *Cornell v. Delco Elecs. Corp.*, 103 F. Supp. 2d 1116, 1120 (S.D. Ind. 2000). In addition, "the Seventh Circuit has held that when a plaintiff is represented by independent counsel who actively negotiates a release, his waiver is presumed to be knowing and voluntary absent vitiating circumstances such as fraud or duress." *Id.* at 1121 (citing *Pierce v. Atchison Topeka & Santa Fe Ry. Co.*, 110 F.3d 431, 438 (7th Cir.

1997)). Plaintiff has not argued, much less presented any evidence, that she was under fraud or duress or of unsound mind when she signed the Mediation Settlement Agreement.

Therefore, the undersigned recommends the Court find that the Mediation Settlement Agreement is a valid, enforceable settlement agreement among the parties.

**B.      The Terms of the Release**

Having found that the Mediation Settlement Agreement created a binding contract among the parties, the Court turns to Defendants' request that Plaintiff be bound by "the standard, customary, provisions found in [the] Proposed Agreement," [Filing No. 74 at 5], as part of Plaintiff's obligation under the Mediation Settlement Agreement to "provide defendants with an indemnifying release," [Filing No. 74 at 11]. As noted above, Plaintiff argues that, to the extent the Court enforces a settlement agreement among the parties, the release terms in the Revised Proposed Agreement should control, which revises section 2.3 and strikes sections 3.1 and 3.12. [Filing No. 75 at 1-2.]

      **1.**     *Section 2.3*

The Revised Proposed Agreement proposes striking the following sentence from section 2.3: "Within five (5) business days of the Effective Date, Plaintiff shall notify the Court as to the settlement of this matter." [Filing No. 74 at 26.] However, the Court was notified of the settlement months ago.

Therefore, the undersigned recommends the Court find the issue moot and deny the enforcement of this provision.

      **2.**     *Section 3.1*

The Revised Proposed Agreement also strikes the entirety of section 3.1. That section provides as follows:

> **3.1 Mutual Confidentiality & Non-Disparagement.** The Parties agree that they will not, without compulsion of legal process, disclose to any third party any of the settlement figures of this Agreement, except that they may disclose such information to their respective attorneys, accountants, spouses, or other professional advisors to whom disclosure is necessary to effect the purposes for which they consulted such professional advisor(s).
>
> The Parties further agree not to, orally, electronically, or in writing, publicly or privately, post, publish, make or express any comment, view or opinion which criticizes, is adverse to, brings into disrepute in the eyes of the public, defames, derogates or disparages another Party, nor shall any Party authorize any agent or representative to make or express any such comment, view or opinion. The Parties further agree that any existing posts, publications, comments, or opinions with respect to any of the Parties and/or claims that may pre-date the execution of this Agreement will be deleted and permanently removed, including on social media sites such as Yelp!, Facebook, and Instagram.
>
> The Parties understand that any breach of this section shall be considered a material breach of this Agreement, and acknowledge that the Parties deem confidentiality and non-disparagement as material conditions of this Agreement, absent which they would not have agreed to the terms set forth herein. Nothing in this Section or in any other provision of this Agreement shall, or is intended to, limit any other rights or remedies any Party may have by virtue of this Agreement or otherwise, including the provisions contained in this Agreement relating to injunctive relief and attorneys' fees and costs.
>
> The Parties further agree that a breach of this confidentiality and non-disparagement section would constitute an irreparable harm to the non-breaching Party, and that in the event of any breach of this Section, the non-breaching Party may obtain an injunction prohibiting future breaches. Further, should either violate this provision of the Agreement, the violating Party shall pay $1,000 to the non-breaching Party and shall pay any and all attorney's fees incurred by the non-breaching Party in enforcing this provision. The availability of injunctive relief is in addition to other remedies available under this Agreement, including the non-breaching Party's right to damages and any reasonable attorneys' fees and costs available under this Agreement for enforcing this provision, as well as any additional remedies available at law.

[Filing No. 74 at 26-27.]

The problem Defendants face is that nowhere in the Mediation Settlement Agreement is there a reference to confidentiality or non-disparagement. Nor have Defendants submitted evidence that there was a meeting of the minds among the parties about confidentiality and non-

8

disparagement. *See Snider v. Fort Wayne Police Dep't*, 2011 WL 4601051, at *3 (N.D. Ind. Sept. 30, 2011) ("Nowhere in Bolinger's statement of the settlement terms is there even a suggestion that FWPD would return Snider's firearm. While Bolinger tried to negotiate for this term in December 2010 and May 2011, Snider informed him on both occasions that the return of the firearm could not be part of the settlement.")  The best Defendants can offer is a conclusory assertion that section 3.1 is a "standard" provision and that Plaintiff's counsel did not strike the language immediately upon receipt, but rather did so a few days later. [Filing No. 77 at 2.]  Neither is evidence of a meeting of the minds.  A release (as contemplated in the Mediation Settlement Agreement) does not inherently include additional provisions for confidentiality and non-disparagement.  Indeed, the release is contained in section 1.1 of the Proposed Agreement. [Filing No. 74 at 1.1.]

Therefore, the undersigned recommends the Court not include confidentiality and non-disparagement as an enforceable provision of the settlement agreement.

   **3.**     *Section 3.12*

Section 3.12, which Plaintiff's counsel also proposed striking, provides that a party may "promptly" recover damages, including "reasonable attorneys' fees and expenses" from a party that is "proven" to breach the Proposed Agreement. [Filing No. 74 at 28.]  In full, the section provides as follows:

> **3.12 Violation of Agreement**. The Parties agree that in the event of any proven breach of this Agreement, the non-breaching Parties shall promptly be reimbursed for every loss, cost, damage, or expense incurred or suffered by virtue of such violation, including reasonable attorneys' fees and expenses.

[Filing No. 74 at 28.]  This attorneys' fees-shifting provision suffers from the same problem as the confidentiality and non-disparagement provision:  Defendants have not submitted evidence that there was a meeting of the minds among the parties.  And a fee-shifting provision of this nature is not inherently part of a release of claims.

9

Therefore, the undersigned recommends the Court not include the attorneys' fees-shifting provision in section 3.12.

### III.
#### CONCLUSION

For the foregoing reasons, the undersigned **RECOMMENDS** that Defendants' Motion to Enforce Settlement Agreement, [73], be **GRANTED IN PART** in accordance with the terms of the Revised Proposed Agreement attached as Exhibit D to Defendants' Memorandum in Support of Motion to Enforce Settlement Agreement. Once the Court receives notification that Defendants have paid Plaintiff $10,000, the Court should dismiss this action, including all claims and crossclaims, with prejudice in accordance with the parties' agreement. All other terms of the settlement agreement set forth in Exhibit D should take effect without further action by the Court.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Date: 10/15/2021

_Mario Garcia_
Mario Garcia
United States Magistrate Judge
Southern District of Indiana

**Distribution via ECF to all counsel of record**